IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID E. RICKETTS,                    :
                                      :
            Plaintiff                 :      CIVIL NO. 1:CV-07-00049
                                      :
      v.                              :      (Judge Rambo)
                                      :
AW OF UNICOR, *et al.*,               :
                                      :
            Defendants                :

# M E M O R A N D U M

Plaintiff David E. Ricketts ("Ricketts"), an inmate formerly confined at the

United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg"),[1] filed,

*pro se*, this civil rights action on January 10, 2007. (Doc. 1.) Since filing the

complaint, counsel has been appointed, and a second amended complaint has been

filed, asserting six (6) claims set forth as *Bivens*[2] claims and a Federal Tort Claims

Act ("FTCA")[3] claim. (Doc. 52.) Ricketts alleges that on August 20, 2004, while

working as a welder at USP-Lewisburg, he was attacked by another inmate who

---

[1]  Ricketts is currently incarcerated at the United States Medical Center for Federal
Prisoners in Springfield, Missouri.

[2]  *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388
(1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a
constitutionally protected interest could invoke the general federal-question jurisdiction of the
district courts to obtain an award of monetary damages against the responsible federal official."
*Butz v. Economou*, 438 U.S. 478, 504 (1978).

[3]  28 U.S.C. § 2671 *et seq.*

stabbed him multiple times in the neck and upper back with a screwdriver. He alleges that as a result of Defendants'[4] negligence in overseeing the operations of the welding shop, he suffered catastrophic physical and mental injuries when the other inmate was able to enter the shop unnoticed and brandishing the screwdriver to be used as a weapon. He also alleges that Defendants were deliberately indifferent to the substantial risk of serious harm posed by the other inmate, in violation of the Eighth Amendment.

Before the court is a joint motion to dismiss and motion for summary judgment filed by Defendants. (Doc. 58.) For the reasons set forth below, Defendants' motion to dismiss with respect to the FTCA claim will be denied, and the motion for summary judgment with respect to the *Bivens* claims will be denied, without prejudice, under the provisions of Federal Rule of Civil Procedure 56(f).

---

[4] Ricketts names the following defendants: the United States of America; Federal Bureau of Prisons, Federal Prison Industries, Inc. ("UNICOR"); Raymond Laws, USP-Lewisburg's associate warden; John Sheesley, millwright supervisor for UNICOR; Jay Young, construction supervisor for UNICOR; Keith Kratzer, welder shop 2 supervisor for UNICOR; and Troy Williamson, USP-Lewisburg's warden.

## I.    Background

In addressing the instant motion, the court first will set forth the relevant facts and procedural history.  In setting forth the relevant facts, the court will note any factual disputes between the parties by presenting both parties' contentions.[5]

### A.    Facts

#### 1.    Incident

During his incarceration at USP-Lewisburg, Ricketts' was employed by Federal Prison Industries, Inc. ("UNICOR") as a welder in the prison's UNICOR factory. (Doc. 70-2, Ex. 2, Decl. Ray Laws, Oct. 6, 2008, 20.)  On August 20, 2004, Ricketts was attacked by inmate Richard Vardenski.  (Doc. 69 ¶ 2.)  The record reveals the following facts related to the attack.

At approximately 12:35 p.m. on August 20, 2004, Donald Rhinehart, a mechanic from the Millwright area of the factory, observed inmate Vardenski walking from the shearing area.  (Doc. 78-2, Ex. E, Mem. D. Rhinehart, Aug. 20, 2004, 10.) Vardenski had removed a screwdriver from the Millwright tool room without seeking

---

[5]  Upon consideration of a motion to seal filed by Defendants (Doc. 59), document 60 has been sealed.  The court has not relied upon the sealed document in its consideration of the motion to dismiss and for summary judgment, as it is not relevant to the dispositive issues of statute of limitations and exhaustion of administrative remedies.  *See infra*.

prior approval from staff and was walking from the Millwright area to the welding area where Ricketts was working at the time. (Doc. 69 ¶¶ 5, 7.)

Soon thereafter, Vardenski attacked Ricketts with the screwdriver, stabbing him multiple times.[6] (Doc. 69 ¶ 2.) Ricketts remembered inmate Vardenski approaching him from behind and hitting him with a pipe before he began stabbing him with the screwdriver. (Doc. 78-2, Ex. B, Lt. K. Gabrielson Mem., Aug. 23, 2004, 7.) Vardenski stabbed Ricketts in the neck and upper back because "he knew this would put a guy down immediately." (Doc. 69 ¶ 8; Doc. 70-2, Ex. 1, Decl. Ray Hoekman, Oct. 3, 2008, 5.) The Special Investigative Agent, Ray Hoekman, obtained the following information from Vardenski:

> [Ricketts] went down immediately and went into the fetal position. Vardenski stated he continued to stab Ricketts and kick him in the head to see if he was faking his injuries. Vardenski stated he stabbed him 15 more times and seeing Ricketts was not moving, thought he may have killed him.

---

[6] While Defendants claim that inmate Vardenski attacked Ricketts with a Phillips-head screwdriver only, (Doc. 69 ¶ 2), Ricketts counters that Vardenski actually used both a pipe and a flat screwdriver to attack him, (Doc. 79 ¶ 2). A report was filed by the Millwright area foreman on August 20, 2004, which listed as missing a 5 3/4" flat screwdriver. (Doc. 78-2, Ex. C, Lost or Missing Tool Report, Aug. 20, 2004, 8.) Further, both a Phillips-head screwdriver and a flat screwdriver, in various sizes, are designated as Class B tools, non-hazardous in nature, in the prison's 2008 tool update list. (Doc. 70-2, Ex. 2, Attach. A, Program Statement 5500.12, Chap. 2, Tools and Hazardous Materials, 24; Doc. 70-3, Ex. 2, Attach. B, USP-Lewisburg Tool Update, Sept. 18, 2008, 14-15.) The prison's tool update list from 2004 is not in evidence.

(Doc. 69 ¶ 9; Doc. 70-2 at 4.)

Vardenski then left the welding area. (Doc. 69 ¶ 10.) He returned to the Millwright area, where he hid his blood stained gloves behind a washing machine and dropped the screwdriver into a toolbox after cleaning it. (*Id*.) Officers from the Special Investigative Services ("SIS") unit at USP-Lewisburg later recovered the gloves and screwdriver. (*Id*. at ¶ 11.)

At approximately 1:00 p.m., the welding shop supervisor called for assistance when he discovered Ricketts laying on the floor in a puddle of blood in one of the welding bays. (Doc. 78-2, Ex. F, SIS Report, 12.) The parties dispute whether Ricketts was conscious at that time and identified Vardinski as his attacker. (Doc. 69 ¶ 13; Doc. 79 ¶ 13.)

As a result of the attack, Ricketts suffered a punctured lung and a partially severed spinal cord. (Doc. 78-2 at 12.) He was transported to Evangelical Hospital in Lewisburg, Pennsylvania, and later life-flighted to Geisinger Medical Center in Danville, Pennsylvania, where he was placed in the Special Care Unit in serious but stable condition. (Doc. 69 ¶ 15; Doc. 78-2, Ex. K, Incident Report, Aug. 20, 2004, 28.)

The parties disagree about the occurrence of previous incidents between Ricketts and Vardenski, and whether Defendants had knowledge of any previous incidents. Specifically, Defendants state that a search of records maintained by USP-Lewisburg officials reveals no reports of previous incidents between the two inmates.[7] (Doc. 69 ¶ 3.) Defendants do state that Ricketts and Vardenski engaged in a verbal disagreement on August 4, 2004. (*Id*.) However, they deny that this verbal disagreement was brought to the attention of any staff member prior to the August 20th attack. (*Id*. at ¶ 4.)

Ricketts does not deny that a previous verbal disagreement occurred between himself and Vardenski, but contests the timing of it, stating that it occurred during the

---

[7] In his declaration, SIS Agent Hoekman states the following:

6. Prior to this assault, neither inmate Ricketts nor inmate Vardenski indicated to me that there were any problems between them which might result in this incident. Furthermore, neither inmate indicated to me that they were in fear for their safety at USP Lewisburg.

7. Additionally, there is no evidence that either inmate made any such indication to any other staff members at USP Lewisburg. If any staff members had been told by an inmate that there was an ongoing threat of assault from another inmate, that information would have been forwarded to me in order to coordinate a threat assessment investigation. If there was credible information that an inmate was in danger of assault, appropriate action would have been taken to protect that inmate. Appropriate action may include: placing one or both inmates in the Special Housing Unit (SHU), informally separating the inmate[s], formally designating as Separatees, or transferring one inmate to another institution.

(Doc. 70-2 at 5.)

week prior to August 4, 2004. (Doc. 79 ¶ 3.) Further, he denies that staff members were not informed of this disagreement prior to the August 20th attack. (*Id*. at ¶ 4.) Ricketts also denies that no prior incidents occurred between the two inmates. (*Id*. at ¶ 2.) Rather, he cites a memorandum filed by USP-Lewisburg Intelligence Officer J. Moscarello, which references an August 12, 2004, incident occurring at 8:15 a.m. between the two inmates.[8] (Doc. 78-2, Ex. D, Mem. J. Moscarello, Aug. 20, 2004, 9.)

### 2. Exhaustion

On June 13, 2006, Ricketts filed a request for administrative remedy, numbered 417066-F1, requesting worker's compensation for the injuries he sustained as a result of the August 20, 2004 attack. (Doc. 69 ¶ 18; Doc. 70-3, Ex. 3, Attach. E, Administrative Remedy Retrieval, Aug. 11, 2008, 62.) USP-Lewisburg's Warden rejected this request as untimely on June 16, 2006. (Doc. 69 ¶ 19; Doc. 70-3 at 62.) Ricketts filed an appeal, numbered 417066-R1, with the North Central Regional Office on June 29, 2006, which was rejected as untimely. (Doc. 69 ¶ 20; Doc. 70-3 at 63.) Ricketts then filed an appeal, numbered 417066-A1, with the BOP's Central

---

[8] The court notes that the details of this August 12, 2004, incident appear very similar to the account of the August 20, 2004, incident, suggesting that J. Moscarello's memorandum may contain typographical errors as to the date and time of the subject incident. (*See* Doc. 78-2 at 9, 11-16.) However, Defendants do not question the veracity of this memorandum.

Office on July 31, 2006.  (Doc. 69 ¶ 21; Doc. 70-3 at 63.)  The Central Office joined

the North Central Regional Office in rejecting Ricketts' appeal as untimely.  (*Id*.)

### 3.    <u>Administrative Tort Claim</u>

Ricketts submitted an administrative tort claim, dated August 15, 2006 and

received by the Northeast Regional Office on August 28, 2006, seeking compensation

for the injuries he sustained on August 20, 2004.  (Doc. 70-3, Ex. 3, Attach. F,

Administrative Tort Claim, Aug. 15, 2006, 68-70.)  Ricketts asserted the following

"complaints:" 1) "failure to maintain a safe and secure work environment;" 2) "failure

to maintain supervision of a class A tool," and; 3) "failure to provide me with 70% of

my grade 1 pay."  (*Id*. at 70.)  The Northeast Regional Office rejected the claim on

October 23, 2006, because Ricketts was claiming a work-related injury.  (Doc. 70-3,

Ex. 3, Attach. F, Decision, Oct. 23, 2006, 72.)  The Office asserted that the exclusive

remedy for inmate work-related accidents is the Inmate Accident Compensation Act,

and thus work-related injuries are specifically excluded from coverage under the

FTCA.  (*Id*.)  The office also informed Ricketts that if he desired to file a claim under

the Inmate Accident Compensation Act, he should contact the safety manager at the

institution where he is currently confined.  (*Id*.)  The instant record does not indicate

whether Ricketts filed such a claim.

**B.    Procedural History**

Ricketts filed his complaint on January 10, 2007. (Doc. 1.) By order dated February 13, 2007, his complaint was dismissed for failure to comply with Federal Rules of Civil Procedure 8 and 10, and he was given an opportunity to submit an amended complaint within twenty (20) days. (Doc. 15.) Ricketts filed an amended complaint on March 6, 2007, (Doc. 17), and service of the complaint was directed by order dated May 30, 2007, (Doc. 21).

On September 21, 2007, Defendants filed a motion seeking dismissal of the amended complaint on the grounds that Ricketts failed to exhaust his administrative remedies and failed to file his complaint within the applicable two-year statute of limitations period. (Doc. 29.) On May 6, 2008, the court denied the motion to dismiss, concluding that (1) is was not clear from the face of the complaint and the undisputed documents on record that Defendants had in place an effective administrative remedy procedure, and (2) it was not clear from the face of the complaint and attached documents that his action is barred by the statute of limitations.[9] (Doc. 46.)

---

[9]    The court noted that the question of whether the action is barred by the applicable statute of limitations, as well as whether Ricketts failed to exhaust, are more appropriately reserved for a later stage of litigation. (Doc. 46 at 15.)

Also on May 6, 2008, the court granted Ricketts' motion for appointment of counsel provided that a member of the *Pro Bono* Panel of the Middle District of Pennsylvania Chapter of the Federal Bar Association volunteered to represent Ricketts. (Doc. 45.) On June 26, 2008, James F. Logue, Esquire filed his entry of appearance on Ricketts' behalf. (Doc. 49.) Accordingly, on August 5, 2008, the court appointed Mr. Logue as counsel for Ricketts. (Doc. 50.)

On August 18, 2008, through counsel, Ricketts filed a second amended complaint, adding party Defendant the United States of America. (Doc. 52.) On October 27, 2008, Defendants filed the instant motion to dismiss and for summary judgment. (Doc. 58.) The motion has been fully briefed and the court addresses it herein.

## II. **Standards of Review**

### A. **Motion to Dismiss - Rule 12(b)(1) Standard**

Defendants have filed a motion which seeks dismissal of Ricketts' claim against the United States on the grounds that the court lacks subject matter jurisdiction over the FTCA claim. In *Henderson v. Nationwide Mut. Ins. Co.*, 169 F. Supp. 2d 365 (E.D. Pa. 2001), the district court for the Eastern District of Pennsylvania stated:

10

Fed. R. Civ. P. 12(b)(1) provides that a party may move to dismiss a lawsuit for lack of jurisdiction over the subject matter. A 12(b)(1) motion may challenge jurisdiction based on the face of the complaint or its existence in fact. *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). When the challenge is facial, the court must accept as true all well-pleaded allegations in the complaint and draw reasonable inferences in favor of the plaintiff. *See Mortensen*, 549 F.2d at 890. When the challenge to jurisdiction is factual, however, the court is not bound by the allegations in the pleadings. *See id*. Therefore, "no presumptive truthfulness attaches to plaintiff's allegations" for factual challenges. *Id*. Regardless of whether the challenge is facial or factual, the plaintiff bears the burden of persuasion. *See id*. Dismissal is proper where the federal claim is "made solely for the purpose of obtaining jurisdiction" or where such a claim is "wholly insubstantial and frivolous." *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 898 (3d Cir. 1987) (citing *Bell v. Hood*, 327 U.S. 678, 682-83, 66 S. Ct. 773, 90 L.Ed. 939 (1946)).

*Id*. at 367-68. Here, Defendants have attached a declaration in support of this motion. (Doc. 70-3, Ex. 3, Decl. Douglas S. Golding, Oct. 14, 2008, 32-38.) Courts can consider documents outside the pleadings when considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction as a factual challenge to jurisdiction. *See Pa. Protection and Advocacy, Inc. v. Houston*, 136 F. Supp. 2d 353, 359 (E.D. Pa. 2001). As such, the court deems Defendants as making a factual challenge to jurisdiction with respect to Ricketts' FTCA claim.

11

**B.** **Motion to Dismiss - Rule 12(b)(6) Standard**

Defendants have filed a motion which, in part, also seeks dismissal of the complaint on the grounds that Ricketts' complaint fails to state a claim upon which relief can be granted, as provided by Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion, however, goes beyond a simple motion to dismiss under Rule 12(b)(6) because it is accompanied by evidentiary documents outside the pleadings contravening Ricketts' claims. Rule 12(d) provides as follows:

> If, on a motion under Rule 12(b)(6) or (12)(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). The court will not exclude the evidentiary materials accompanying Defendants' motion to dismiss because Ricketts' has also been given a reasonable opportunity to present material relevant to the motion. Thus, Defendants' motion to dismiss under Rule 12(b)(6) and for summary judgment, shall be treated as seeking summary judgment rather than dismissal under Rule 12(b)(6).

**C.** **Summary Judgment**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id*. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.  **Discussion**

Defendants seek entry of dismissal or summary judgment on the grounds that: (1) the court lacks jurisdiction over the subject matter as to the FTCA claim against the United States; (2) the *Bivens* claims are barred by the applicable statute of limitations; (3) Ricketts failed to exhaust his administrative remedies with respect to his *Bivens* claims; (4) Ricketts fails to set forth a viable failure to protect claim; and (5) Defendants are entitled to qualified immunity.  The court will discuss each in turn.

### A.  **FTCA Claim**

Defendants first claim that the second amended complaint should be dismissed as to the FTCA claim because the court lacks jurisdiction over the subject matter of that claim.  Specifically, Defendants contend that Ricketts' FTCA claim is time barred by the applicable statute of limitations for filing such a claim in district court. Defendants also argue that the FTCA claim should be dismissed because the Inmate

14

Accident Compensation Act is the exclusive remedy for claims against the United States relating to an injury suffered by an inmate during the course of his work assignment. Finally, Defendants claim they are entitled to the discretionary function exception with respect to the FTCA claim. The court will address these arguments in turn.

### 1.    Statute of Limitations

As stated above, Defendants contend that Ricketts' FTCA claim is time-barred by the applicable statute of limitations. Under the provisions of 28 U.S.C. § 2401(b),

> [a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented.

§ 2401(b). Thus, to timely file an FTCA claim, a plaintiff must commence an administrative tort claim within two years of the date the claim accrues, and the claim in the district court must be commenced within six months of the date the administrative tort claim becomes final. *Id.*

In the instant case, Ricketts filed his administrative tort claim on August 15, 2006. (Doc. 70-3 at 68-70.) That claim was rejected as untimely by the Northeast Regional Office on October 23, 2006. (*Id*. at 72.) Thus, Ricketts had six months, or

until April 23, 2007, to file an FTCA claim against the United States. Ricketts filed

the original complaint, *pro se*, on January 10, 2007, but failed to name the United

States as a party defendant.[10] (Doc. 1.) However, on page seven of the original

complaint, attached to the form complaint and headed "memorandum of law,"

Ricketts asserted that this court has jurisdiction pursuant to 28 U.S.C. § 1346(b), and

a duty is owed to him by Defendants pursuant to 28 U.S.C. § 1346(b). (*Id*. at 7.)

Ricketts further stated that he has complied with 28 U.S.C. § 2401(b) by filing his tort

claim within the required two years. (*Id*.) Finally, he stated that he is seeking

compensation from Defendants under 28 U.S.C. § 2671. (*Id*.) Nevertheless,

Defendants claim here that because he failed to name the United States as a party

defendant in that original complaint, by the time the second amended complaint was

filed on August 18, 2008, the six-month statute of limitations period for filing an

FTCA claim had long since expired.

   The court finds that Ricketts' error in not naming the United States as a party

defendant may be excused under the principle of equitable tolling. The Third Circuit

Court of Appeals has held that the FTCA's statute of limitations is not jurisdictional,

and that failure to comply with the statute of limitations is an "affirmative defense."

---

[10] The United States is the only proper party defendant in an FTCA action. 28 U.S.C. § 2679(b) and (d)(1).

*Hughes v. United States*, 263 F.3d 272, 278 (3d Cir. 2001).  Thus, equitable tolling

can apply to an FTCA claim.  *Id*.  Federal courts invoke the doctrine of equitable

tolling "only sparingly," and will not toll a statute of limitations because of "what is

at best a garden variety claim of excusable neglect."  *Irwin v. Dep't of Veterans*

*Affairs*, 498 U.S. 89, 96 (1990).  Equitable tolling is generally permitted "where the

claimant has actively pursued his judicial remedies by filing a defective pleading

during the statutory period, or where the complainant has been induced or tricked by

his adversary's misconduct into allowing the filing deadline to pass."  *Id*.  *See also*

*Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009) (recognizing

"a plaintiff will not receive the benefit of equitable tolling unless she exercised due

diligence in pursuing and preserving her claim") (citing *Irwin*, 498 U.S. at 96).  The

Supreme Court noted that courts "have generally been much less forgiving in

receiving late filings where the claimant failed to exercise due diligence in preserving

his legal rights."  *Irwin*, 498 U.S. at 96 (citing *Baldwin County Welcome Ctr. v.*

*Brown*, 466 U.S. 147, 151 (1984)).

In the instant case, Ricketts claims that his failure to name the United States as

a party in his original complaint should be excused as defective pleading.  He

contends that his lack of legal training and knowledge should excuse the defective

pleading. Further, he contends that the court should construe his allegations set forth in that original, timely complaint as seeking relief under the FTCA because the record shows that he has been actively pursuing his judicial remedies despite the defective pleading. The court agrees that Ricketts is entitled to equitable tolling of his FTCA claim on these grounds. Moreover, as the court has previously construed Ricketts' original complaint as a claim, in part, under the FTCA, (*see* Doc. 46), the court here will maintain its position that Ricketts has set forth a claim under the FTCA. It is also noted that in cases where a plaintiff asserts FTCA claims against a defendant not named as the United States, this court is inclined to substitute the United States as the proper defendant. *See, e.g.*, *Thomas v. United States*, 558 F. Supp. 2d 553, 557 n.9 (M.D. Pa. 2008); *Johnson v. Williamson*, No. 1:08-cv-00816, 2008 WL 2944669, at *2 (M.D. Pa. July 28, 2008); *Burke v. Gonzales*, No. 1:06-cv-0573, 2006 WL 3762061, at *4 (M.D. Pa. Dec. 21, 2006). As such, Defendants' motion to dismiss under Rule 12(b)(1) will be denied.

## 2. **Inmate Accident Compensation System**

Defendants also contend that Ricketts' FTCA claim fails on the basis that the exclusive remedy for claims against the United States relating to an injury suffered by an inmate during the course of his work assignment is the Inmate Accident

18

Compensation Act, 18 U.S.C. § 4126. The court disagrees that the Act applies in this case.

In the Inmate Accident Compensation Act, Congress created a scheme to compensate inmates for injuries sustained in the course of their penal employment. *Id*. By statute, the Federal Prison Industries Fund pays "compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." § 4126(c)(4); *see also* 28 C.F.R. § 301.101-301.319 (regulating such claims). Further, "work-related injury" is defined by the regulations as "any injury, including occupational disease or illness, proximately caused by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.102.

In *United States v. Demko*, 385 U.S. 149, 152 (1966), the Supreme Court held that the exclusive remedy for a federal prisoner who is injured while performing a work assignment in a federal penitentiary is under 18 U.S.C. § 4126. *See also Wooten v. United States*, 825 F.2d 1039, 1044 (6th Cir. 1987) (recognizing that § 4126 serves as the exclusive remedy only when the injury suffered by the inmate is work-related). Here, Ricketts asserts that because his injuries were caused by an inmate and were the result of Defendants' negligent actions, rather than from the

actual work he was performing in the welding shop, § 4126 is not the exclusive

remedy for his injuries.  The court agrees that Ricketts' injuries were not the result of

the actual performance of his work, and therefore the Inmate Accident Compensation

Act does not bar any other claim arising out of his injuries.  Accordingly, Defendants'

motion to dismiss will be denied on this ground.

### 3.    Discretionary Function Exception

Defendants also claim that Ricketts' FTCA claim is barred by the discretionary

function exception, which is another of the limitations on the United States' waiver of

sovereign immunity.[11]  Under the discretionary function exception, the FTCA's

waiver of sovereign immunity does not apply to "[a]ny claim based upon an act or

omission of an employee of the Government . . . based upon the exercise or

performance or the failure to exercise or perform a discretionary function or duty on

the part of a federal agency or an employee of the Government."  28 U.S.C. §

2680(a).  A two-part inquiry guides the application of the exception:

> First, a court must determine whether the act involves an element of
> judgment or choice. The requirement of judgment or choice is not
> satisfied if a federal statute, regulation, or policy specifically prescribes a
> course of action for an employee to follow. Second, even if the

---

[11]  Defendants raise this exception in a footnote in their supporting brief. (Doc. 70 at 24 n.4.)

> challenged conduct involves an element of judgment, the court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Mitchell v. United States*, 225 F.3d 361, 363-64 (3d Cir. 2000) (citations and internal punctuation omitted).

Courts within this circuit and others have uniformly held that federal prisoners' FTCA claims for injuries by fellow inmates are barred by the discretionary function exception. *See, e.g.*, *Donaldson v. United States*, 281 Fed. Appx. 75, 76-78 (3d Cir. 2008); *Castillo v. United States*, 166 Fed Appx. 587, 589 (3d Cir. 2006); *Michtavi v. United States*, Civ. No. 4:07-cv-0628, 2009 WL 578535, at *10 (M.D. Pa. Mar. 4, 2009); *Baker v. United States*, C.A. No. 05-147, 2006 WL 3717382, at *6 (W.D. Pa. Dec. 14, 2006); *Redmond v. United States*, Civ. No. 4:04-cv-231, 2006 WL 709347, at *3-4 (M.D. Pa. Mar. 20, 2006). However, section 4042 of Title 18 of the United States Code imposes a general duty of care on the BOP to safeguard its prisoners. But the regulation does not dictate the manner by which that duty is to be fulfilled. *Cohen v. United States*, 151 F.3d 1338, 1343 (11th Cir. 1998). Hence, § 4042 leaves the implementation of the duty of care to the discretion of prison officials, and "how

best to protect one inmate from the threat of attack by another 'is of the kind that the discretionary function exception was designed to shield.'" *Donaldson*, 281 Fed. Appx. at 77 (quoting *Mitchell*, 225 F.3d at 363).

The record before the court at this stage in the litigation does not establish some action or inaction by Defendants in providing a duty of care, i.e., security, staffing, training, or the like, which may or may not have caused Ricketts to be assaulted on August 20, 2004. As a result, the court is not in a position here to determine if Defendants' act or omission involved an element of judgment, and if that judgment is of the kind that the discretionary function exception is designed to shield. Therefore, viewing the facts in the light most favorable to Ricketts, and without more discovery,[12] the court cannot say at this time that Defendants' conduct falls within the discretionary function exception. Thus, the motion to dismiss will be denied, and Ricketts' FTCA claim will be allowed to proceed at this stage of the litigation.

### B.   *Bivens* Claims

As stated above, Defendants seek entry of dismissal or summary judgment of Ricketts' *Bivens* claims on several grounds, including: (1) the claims are barred by the applicable statute of limitations; (2) Ricketts failed to exhaust his administrative

---

[12]   *See infra* pp. 32-35.

remedies; (3) Ricketts fails to set forth a viable claim for deliberate indifference; and (4) Defendants are entitled to qualified immunity. The court will discuss these grounds in turn.

### 1. <u>Statute of Limitations</u>

Defendants first contend that Pennsylvania's applicable statute of limitations precludes consideration of Ricketts' *Bivens* claims. In support, they state that the statute of limitations began to run as of August 20, 2004, the date of the Ricketts' assault and as a result it was necessary to file the instant *Bivens* claims by August 20, 2006.

In applying the statute of limitations to a *Bivens*-type civil rights action, a federal court must employ the appropriate state statute of limitations which governs personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 457 n.9 (3d Cir. 1996); *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 913 (7th Cir. 2000) (noting that the statute of limitations for a § 1983 action and a *Bivens* action are both governed by the state statute of limitations for personal injury claims). The *Wilson* Court clarified that courts considering federal civil rights claims "should borrow the general or residual [state] statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 250

(1989); *Little v. Lycoming County*, 912 F. Supp. 809, 814 (M.D. Pa. 1996).

Pennsylvania's applicable personal injury statute of limitations is two years. *See* 42 Pa. Cons. Stat. Ann. § 5524(7); *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993).

However, the date when a cause of action accrues is still a question of federal law. *Smith v. Wambaugh*, 887 F. Supp. 752, 755 (M.D. Pa. 1995). Under federal law, a civil rights cause of action accrues, and the statute of limitations begins to run, when the plaintiff "knew or should have known of the injury upon which [the] action is based." *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998) (section 1983 action). The limitations period begins to run if a plaintiff has sufficient notice to place him on alert of the need to begin investigating. *Gordon v. Lowell*, 95 F. Supp. 2d 264, 272 (E.D. Pa. 2000). Under *Gordon*, a "claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." *Id*.

In the instant case, Ricketts' original complaint was filed in this court on January 10, 2007. (Doc. 1.) Further, it is undisputed that Ricketts was assaulted on August 20, 2004. Ricketts complains that Defendants' indifference led to the attack that injured him seriously. Since the case arose out of the attack on Ricketts, he knew of his injury on that day, and knew that it had been caused by the deliberate

24

indifference of the prison officials he claims failed to protect him. Thus, Ricketts had

two years from that date, or until August 20, 2006, to file a *Bivens* action against

Defendants. Ricketts did raise his *Bivens* claim in his original complaint, but by the

time it was filed on January 10, 2007, the two-year limitations period had expired. As

a result, Ricketts cannot state a claim here unless Ricketts can set forth reasons why

his tardiness should be excused.

A district court may apply any relevant state equitable tolling principles, unless

they conflict with federal law and policy. *Lake v. Arnold*, 232 F.3d 360, 368-70 (3d

Cir. 2000). The Third Circuit has found that

> [e]quitable tolling is appropriate in three general scenarios: (1) where a
> defendant actively misleads a plaintiff with respect to her cause of
> action; (2) where the plaintiff has been prevented from asserting her
> claim as a result of other extraordinary circumstances; or (3) where the
> plaintiff asserts her claims in a timely manner but has done so in the
> wrong forum.

*Id*. at 370 n.9.

In his opposition to the instant motion, Ricketts contends, in part, that

extraordinary circumstances prevented him from timely filing his *Bivens* action.

Specifically, Ricketts asserts that the very actions for which he is suing Defendants

injured him so seriously that he was unable to pursue a remedy in a timely fashion.

Therefore, Ricketts asserts that the two-year limitations period should have been

tolled until "the summer of 2005" - on or around the time he was transferred to the

United States Medical Center for Federal Prisoners in Springfield, Missouri, and was

able to "make decisions, communicate, feed myself, [and] take care of myself." (Doc.

78-2, Ex. L, Advanced Directive, May 11, 2005.)  Based upon these assertions, the

court finds that equitable tolling applies, as "extraordinary circumstances" exist

because Ricketts "could not by the exercise of reasonable diligence have discovered

essential information bearing on his claim."[13]  *Cada v. Baxter Healthcare Corp.*, 920

F.2d 446, 452 (7th Cir. 1990).  Consequently, summary judgment will not be granted

to Defendants on this basis.

---

[13]  Ricketts also claims that the limitations period should be tolled by the discovery rule, a judicially created, equitable rule that tolls the period during the time that a plaintiff could not have known, in the exercise of reasonable diligence, about the existence of his injury.  *Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997).  *See also Campbell v. Kelly*, 87 Fed. Appx. 234, 236 (3d Cir. 2003) (statute of limitations may be subject to equitable tolling where it is shown that the plaintiff exercised reasonable diligence in bringing his claims).  In support, he asserts that his injury did not accrue until 2005, when he had reason to know that he was injured by Defendants deliberate indifference to his health and safety.  As stated herein, the court rejects this contention and finds that the cause of action arose on the day of the attack.

Ricketts further asserts that he delayed filing his complaint because he had no duty to begin his investigation into prison officials' liability in this matter until guilt was established on inmate Vardenski's behalf on March 28, 2005, the date judgment was entered against him in court with respect to criminal charges arising out of the August 20th attack.  He cites no legal authority for this contention, and the court is aware of no legal provision requiring a civil rights plaintiff to delay filing of his complaint until judgment is entered upon his assailant, a non-state actor who is not named in this action.  Therefore, Ricketts' assertions that he was waiting to begin his investigation until the conclusion of inmate Vardenski's criminal proceedings do not merit equitable relief.

## 2. Exhaustion of Administrative Remedies

Defendants also seek dismissal of Ricketts' amended complaint on the grounds that he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996).

The PLRA requires a prisoner to present his claims through an administrative grievance process before seeking redress in federal court. The act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[I]t is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp 2d 884, 894-95 (S.D.N.Y. 1998) (citing *Weinberger v. Salfi*, 422

27

U.S. 749, 766 (1975)).  The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis*, 204 F.3d at 71.  The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91.  Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 93 (quoting *Nussle*, 534 U.S. at 525).  Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. *Ray*, 285 F.3d at 295.  Failure to exhaust available administrative remedies is an affirmative defense. *Id*.  Therefore, it must be pleaded and proven by the defendants. *Brown*, 312 F.3d at 111.

An inmate may challenge any aspect of his or her confinement using the BOP's administrative remedy procedure, which is set forth at 28 C.F.R. §§ 542 *et seq*. An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. *Id*. at § 542.14(a). The inmate has twenty (20) days following the date on which the basis for the complaint occurred in which to complete informal resolution and submit a formal written administrative remedy request. *Id*. The procedure further provides that an extension may be allowed where an inmate demonstrates a valid reasons for delay. § 542.14(b). The regulation states, in part,

> [v]alid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request of Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

*Id*. If dissatisfied with the response to the formal written request, the inmate may then appeal an adverse decision to the Regional Office and the Central Office of BOP's General Counsel. *Id*. at §§ 542.15(a) and 542.18. No administrative appeal is

considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. § 542.15(a).

In the instant case, Defendants contend that although Ricketts attempted to file requests for administrative remedies at all levels of appeal, those requests are procedurally defaulted and thus subject to dismissal. Specifically, Defendants argue that Ricketts' initial request was filed late and rejected, and as a result, all subsequent appeals were also rejected. Because Ricketts' requests were not addressed on the merits, he has failed to exhaust his administrative remedies.

It is undisputed that Ricketts' June 2006 request for administrative remedy was rejected as untimely. The incident complained of in this case occurred on August 20, 2004. Absent "a situation which prevented [Ricketts] from submitting" a request for administrative remedy within twenty days of that date, or September 9, 2004, claims arising from that incident are procedurally defaulted and subject to dismissal. *Spruill*, 372 F.3d at 227-232.

However, "[w]here an inmate demonstrates a valid reason for delay" in filing a grievance, the BOP's administrative remedy program provides for an extension of the 20-day filing period. 28 C.F.R. § 542.14(b). In his brief in opposition to the instant motion, Ricketts counters that his untimely filing should have been excused under 28

C.F.R. § 542.14(b) because there existed an extended period of time in which he was physically incapable of preparing a request or appeal. In support, Ricketts attaches to his brief the administrative remedy appeal in which he sets forth that during the twenty days following the August 20, 2004 incident, he was paralyzed and being transported to various medical facilities, where he remained in the intensive care units. (Doc. 78-2, Ex. N, Regional Administrative Remedy Appeal, June 29, 2006, 36-37.) The North Central Regional Office nevertheless rejected Ricketts' appeal as untimely. (Doc. 70-3 at 63.) Ricketts then appealed to the BOP's Central Office, which also rejected Ricketts' appeal as untimely. (*Id*.) The computer records of Ricketts' grievance and appeals therefrom do not indicate whether Ricketts' circumstances were considered in the decisions to reject them as untimely. (*Id*. at 62-63.) In their response, Defendants claim that Ricketts' did not exhaust his administrative remedies because he did not expressly seek an extension of time for filing the grievance by "asserting that medical reasons were the 'situation which prevented [him] from submitting the request within the established time frame' as set forth in § 542.14(b)." (Doc. 83 at 6.) However, after reviewing the evidence on summary judgment, while it is not clear whether Ricketts expressly requested an extension pursuant to § 542.14(b), it is clear that in his appeals Ricketts did set forth

31

such medical reasons to justify the delay in filing his request for administrative remedy. As a result, the court finds that Ricketts has demonstrated a genuine issue of material fact as to whether he failed to comply with the PLRA before initiating this action, and thus, Defendants' motion for summary judgment will not be granted on this basis.[14]

### 3. Failure to Protect Claims

Defendants also move for summary judgment on Ricketts' failure to protect claims, contending that Ricketts was not incarcerated under conditions that posed a substantial risk of serious harm and, further, that they did not know of and disregard an excessive risk to Ricketts' safety. In his opposition to the instant motion on this issue, Ricketts requests relief under Federal Rule of Civil Procedure 56(f), to pursue further discovery and develop the facts of the case, thereby permitting a more thorough response to the summary judgment motion.

Rule 56(f) states

---

[14] In their brief in support of the instant motion, Defendants also argue that the filing of an administrative tort claim by Ricketts did not serve as a substitute for using the administrative remedy program. As "[t]he filing of an administrative tort claim by a prisoner does not excuse the prisoner's failure to meet the separate exhaustion requirements for a *Bivens* claim under the PLRA," *Vega v. United States Dep't of Justice*, No. 1:cv-04-2398, 2005 WL 2931841, at *8 (M.D. Pa. Nov. 4, 2005) (citing *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 268 (E.D. N.Y. 2005), the court agrees with Defendants and thus need not address this argument of exhaustion of administrative remedies with respect to Ricketts' *Bivens* claims further.

> (f) When Affidavits Are Unavailable. If a party opposing the motion
> shows by affidavit that, for specified reasons, it cannot present facts
> essential to justify its opposition, the court may:
>
> (1)    deny the motion;
> (2)    order a continuance to enable affidavits to be obtained,
>        depositions to be taken, or other discovery to be undertaken;
>        or
> (3)    issue any other order.

Fed. R. Civ. P. 56(f). The Supreme Court has recognized that premature motions for summary judgment should be dealt with pursuant to Rule 56(f) if the opposing party has not made full discovery. *Celotex*, 477 U.S. at 326. The district court is empowered with discretion to determine when such a motion is ripe. *Sames v. Gable*, 732 F.2d 49, 51 (3d Cir. 1984).

To preserve this issue, Rule 56(f) requires the opposing party to file an affidavit outlining the reasons for the party's opposition. *Galgay v. Gil-Pre Corp.*, 864 F.2d 1018, 1020 n.3 (3d Cir. 1998). An opposing party must set forth with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained. *Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1314 (3d Cir. 1994).

Here, Ricketts claims that because Defendants filed the instant motion prior to answering the second amended complaint, he has not had the opportunity to conduct discovery with respect to the issues related to his claims, and therefore has not been

33

able to present all material facts necessary to justify opposition to the instant motion. In support, he filed an affidavit pursuant to Rule 56(f) with his brief in opposition to the motion for summary judgment. (Doc. 78-2, Logue Aff., Dec. 29, 2008, 17-20.) In the affidavit, Ricketts asserts that the following information must be obtained through further discovery:

a.   Deposition of individuals responsible for the investigation into the attack on the Plaintiff.

b.   Depositions of prison employees to determine what knowledge or facts were available regarding prior disputes between the Plaintiff and his assailant.

c.   Depositions and interrogatories of prison officials regarding security procedures and practices in the UNICOR facility before and after the attack.

d.   Interrogatories relating to the methods of tracking inmate movements between UNICOR shops, and whether such methods were implemented properly on the day of the attack.

e.   Interrogatories and depositions relating to procedures for tracking inmate procurement of tools, and tracking the movement of such tools in the UNICOR facility.

f.   Depositions and interrogatories to determine whether any prison official or employee had knowledge of the impending attack, the use of which could have prevented said attack.

g.   Depositions and interrogatories regarding the presence of security measures in the UNICOR facility.

h.     Document requests regarding the investigation of the attack.

i.     Document requests, depositions, and interrogatories regarding the medical condition of the Plaintiff at all times prior to the filing of this matter for the purpose of raising a defense of equitable tolling of the statute of limitations.

j.     Deposition of the assailant to determine the specific motivation for the attack, and whether the assailant had any interactions relevant thereto with any prison official prior to the attack.

k.     Document requests to discover the tool classification at the time of the attack.

l.     Blueprint plans/layout of the UNICOR facility.

m.     Photographs of the UNICOR facility.

(Doc. 78-2 at 18-19.)  The court concludes that this affidavit satisfies the requirements of Rule 56(f), and it is sufficient to grant relief under the Rule. Accordingly, Defendants' motion for summary judgment will be denied, without prejudice, to permit Ricketts to pursue further discovery.

### 4.     Qualified Immunity

Defendants claim that because Ricketts' allegations do not rise to the level of any constitutional violation, they are entitled to qualified immunity.  As the court has already determined that Ricketts has not had the opportunity to conduct discovery

with respect to his allegations of constitutional violations, *see supra*, the court will

not address whether Defendants are entitled to qualified immunity at this juncture.


**IV.    Conclusion**

For the reasons set forth herein, the motion to dismiss Ricketts' FTCA claim

will be denied.  Further, with respect to the *Bivens* claims, the court will deny

Defendants' motion for summary judgment, without prejudice, under the provisions

of Federal Rule of Civil Procedure 56(f).

An appropriate order follows.


                                    s/Sylvia H. Rambo
                                    United States District Judge

Dated:  July 24, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DAVID E. RICKETTS,**                    :
                                          :
        **Plaintiff**          :          **CIVIL NO. 1:CV-07-00049**
                                          :
    **v.**                         :          **(Judge Rambo)**
                                          :
**AW OF UNICOR,** *et al.,*               :
                                          :
        **Defendants**        :

# O R D E R

**AND NOW**, this 24th day of July, 2009, in accordance with the foregoing

memorandum, **IT IS HEREBY ORDERED THAT:**

1) Defendants' motion to dismiss the complaint (Doc. 58) with respect to

Plaintiff's FTCA claim is **DENIED**;

2) Defendants' motion for summary judgment (Doc. 58) with respect to

Plaintiff's *Bivens* claims is **DENIED,** without prejudice, under the provisions of

Federal Rule of Civil Procedure 56(f); and

2) Defendants are directed to file an answer to the second amended complaint

within twenty (20) days of the date of this order.

                        s/Sylvia H. Rambo      
                        United States District Judge